# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| CRYSTAL BARTZ, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br>  v.<br><br>FROST-ARNETT COMPANY,<br><br>    Defendant. | Case No.: 18-cv-1420<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA").

## JURISDICTION

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Crystal Bartz is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt allegedly incurred for personal, family, or household purposes.

5. Defendant Frost-Arnett Company ("Frost-Arnett") is a foreign limited liability company with its principal place of business located at 2105 Elm Hill Pike, Suite 200, Nashville, TN 37210.

6. Frost-Arnett does substantial business in Wisconsin and maintains a registered agent for service of process at C T Corporation System, 301 S. Bedford St. Suite 1, Madison, Wisconsin 53703.

7. Frost-Arnett is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. Frost-Arnett is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

9. Frost-Arnett is a debt collector as defined in 15 U.S.C. § 1692a.

### FACTS

10. On or about April 16, 2018, Frost-Arnett mailed Plaintiff a debt collection letter regarding an alleged debt owed to "MADISON MEDICAL AFFILIATES." A copy of this letter is attached to this Complaint as Exhibit A.

11. Upon information and belief, the alleged debt identified in Exhibit A was incurred as the result of a transaction for personal medical services in which payment was deferred by agreement. *See Tylke v. Advanced Pain Mgmt., S.C.*, Case No. 14cv5354 (Milwaukee Co. Cir. Ct., Dec. 11, 2014) ("Any time a merchant sends a bill for goods or services after a consumer transaction has taken place, there is an 'agreement to defer payment'").

12. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

13. Upon information and belief, Exhibit A is a form debt collection letter, used by Defendant to attempt to collect alleged debts.

14. Upon information and belief, Exhibit A was the first letter Defendant sent to Plaintiff regarding this alleged debt.

2

15. <u>Exhibit A</u> contains the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail alleged debtors along with, or within five days of, the initial communication:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the current creditor.

16. <u>Exhibit A</u> also includes the following representations:

| YOU OWE: | Creditor | Amount Owed | Turnover |
|---|---|---|---|
| | MADISON MEDICAL AFFILLIATES | 128.45 | 04/12/18 |
| | TOTAL NEW ACCOUNTS: 128.45 | | |

17. <u>Exhibit A</u> also includes the following representations:

| Master Number: | QWT350 |
|---|---|
| Zip Code: | 53129 |
| Total Balance: | $128.45 |

18. <u>Exhibit A</u> thus lists an "Amount Owed" and a "Total Balance" of $128.45 and indicates that the "Creditor" is "MADISON MEDICAL AFFILIATES," but includes no additional information regarding the nature or origin of the alleged debt.

19. Instead, <u>Exhibit A</u> lists only a "Turnover" date of 04/12/18, though there is not additional information indicating to what the "Turnover" date refers.

20. Given the lack of context, the unsophisticated consumer would not understand to what the "Turnover" date listed in <u>Exhibit A</u> refers.

21. Upon information and belief and pursuant to the investigation of Plaintiff's counsel, the "Turnover" date listed on <u>Exhibit A</u> simply refers to the date on which the alleged

3

debt was assigned to Frost-Arnett by the creditor and does not provide any information the consumer could use to identify the alleged debt.

22. On or about May 23, 2018, Frost-Arnett mailed Plaintiff another debt collection letter regarding alleged debts also owed to "MADISON MEDICAL AFFILIATES." A copy of this letter is attached to this Complaint as <u>Exhibit B</u>.

23. Upon information and belief, the alleged debts identified in <u>Exhibit B</u> were also incurred as the result of a transaction for personal medical services in which payment was deferred by agreement.

24. Upon information and belief, <u>Exhibit B</u> is another form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

25. Upon information and belief, <u>Exhibit B</u> is another form debt collection letter, used by Defendant to attempt to collect alleged debts.

26. Upon information and belief, <u>Exhibit B</u> was the first letter Defendant sent to Plaintiff regarding this additional alleged debt referenced therein.

27. <u>Exhibit B</u> contains the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail alleged debtors along with, or within five days of, the initial communication:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the current creditor.

4

28.  Exhibit B also includes the following representations:

| YOU OWE: | Creditor | Amount Owed | Turnover |
|---|---|---|---|
| | MADISON MEDICAL AFFILLIATES<br>TOTAL NEW ACCOUNTS: 128.45 | 128.45 | 05/17/18 |

29.  Exhibit B additionally includes the following representations:

| Master Number: | QWT350 |
|---|---|
| Zip Code: | 53129 |
| Total Balance: | $256.90 |

30.  Similar to Exhibit A, Exhibit B thus lists an "Amount Owed" of $128.45 and indicates the "Creditor" is "MADISON MEDICAL AFFILIATES," but unlike Exhibit A, Exhibit B lists a "Total Balance" of $256.90.

31.  Exhibit B also lists a "Turnover" date of 05/17/2018.

32.  Aside from the ambiguous "Turnover" date, there is thus absolutely no distinction between the $128.45 alleged debt sought by Exhibit B and the 128.45 alleged debt sought by Exhibit A.

33.  Moreover, Exhibit B includes the following representations:

\*\*For your added information, it is possible that you also have other existing accounts with us. Any such older accounts are listed on the back side of this letter. Please note that any accounts on the back side are not subject to the 30-day validation period for your new accounts detailed above.\*\*

34.  On the backside of the letter, Exhibit B includes the following representation:

PRIOR EXISTING ACCOUNTS

| YOU OWE: | Creditor | Amount Owed | Turnover |
|---|---|---|---|
| | MADISON MEDICAL AFFILLIATES<br>TOTAL PREVIOUS ACCOUNTS 128.45<br>TOTAL COMBINED NEW AND PREVIOUS ACCOUNTS 256.90 | 128.45 | 04/12/18 |

5

35. The backside of Exhibit B thus lists "TOTAL PREVIOUS ACCOUNTS" in the amount of $128.45 as well as a "TOTAL COMBINE NEW AND PREVIOUS ACCOUNTS" in the amount of $256.90.

36. The statement "Please note that any accounts on the back side are not subject to the 30-day validation period for your new account detailed above" is therefore false, deceptive, misleading, and confusing.

37. Because both the "TOTAL PREVIOUS ACCOUNTS" as well as a "TOTAL COMBINE NEW AND PREVIOUS ACCOUNTS," which includes the "new" account listed for the first time on Exhibit B, are listed on the backside of Exhibit B, the unsophisticated consumer would likely understand the statement "Please note that any accounts on the back side are not subject to the 30-day validation period for your new account detailed above" to mean that the validation period detailed above did not apply to either of the alleged debts referenced by Exhibit B.

38. The statement in Exhibit B to the consumer to "Please note that any accounts on the back side are not subject to the 30-day validation period for your new account detailed above" therefore overshadows the validation notice.

39. Indeed, the confusion is confounded by the fact that the two alleged debts sought by Exhibits A & B are effectively indistinguishable, both letters list an "Amount Owed" of $128.45 and indicate that the "Creditor" is MADISON MEDICAL AFFILIATES," without listing any additional information about the alleged debts such as a specific account or invoice number or a date of service.

40. A consumer receiving collection letters in the form of Exhibits A & B listing indistinguishable debts of the same amount would be discouraged from disputing the second

6

alleged debt after the validation period on the first alleged debt had expired because they would have no way to determine whether any documentation purporting to verify the debt applied to the former debt referenced in Exhibit A or the subsequent debt referenced in Exhibit B.

41. Such confusion is further confounded by the fact that the original creditor would seem to have billed Plaintiff for the alleged debts referenced in Exhibits A & B together in a single invoice.

42. For example, on or around January 11, 2018, several months before Frost-Arnett mailed Plaintiff its initial collection letter, the creditor, Madison Medical Affiliates, Inc., mailed Plaintiff a billing statement which sought to collect what appears to be the same alleged debts referenced in Exhibits A & B. A copy of this billing statement is attached to the complaint as Exhibit C.

43. Exhibit C lists a total "Payment Due" of $256.90.

44. Furthermore, Exhibit C indicates that the billing statement is a "Final Notice," and that "[the creditor] will need to hear from you to avoid having your account assigned within the next 30 days to a collection agency."

45. Plaintiff was confused by Exhibits A & B.

46. The unsophisticated consumer would be confused by Exhibits A & B.

### *The FDCPA*

47. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017

U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in *Pogorzelski*, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist

8

without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

48. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses"). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

49. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

50. 15 U.S.C. § 1692e(2)(a) specifically prohibits the "false representation of the character, amount, or legal status" of an alleged debt.

51. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

52. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

53. 15 U.S.C. § 1692g states:

> a) Notice of debt; contents
>
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless

9

the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

54. 15 U.S.C. § 1692g(b) states, in part, that "collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor."

55. The Seventh Circuit has held that a debt collector must state the correct amount of the debt on the date a letter is sent to a consumer. *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000):

> It is no excuse that it was "impossible" for the defendants to comply when as in this case the amount of the debt changes daily. What would or might be impossible for the defendants to do would be to determine what the amount of the debt might be at some future date if for example the interest rate in the loan agreement was variable. What they certainly could do was to state the total amount due--interest and other charges as well as principal--on the date the dunning letter was sent. We think the statute required this.

56. While *Miller* addressed a debt collector's obligation to provide the amount of the debt under 15 U.S.C. § 1692g(a)(1), the Seventh Circuit has held that the standards for claims

10

under § 1692e and § 1692g are the same. *McMillan v. Collection Professionals, Inc.*, 455 F.3d 754, 759 (7th Cir. 2006).

> We cannot accept the district court's view that claims brought under § 1692e or § 1692f are different from claims brought under § 1692g for purposes of Rule 12(b)(6) analysis. Whether or not a letter is 'false, deceptive, or misleading' (in violation of § 1692e) or 'unfair or unconscionable' (in violation of § 1692f) are inquiries similar to whether a letter is confusing in violation of § 1692g. After all, as our cases reflect, the inquiry under §§ 1692e, 1692g and 1692f is basically the same: it requires a fact-bound determination of how an unsophisticated consumer would perceive the letter.")

## COUNT I – FDCPA

57. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

58. By stating "Please note that any accounts on the back side are not subject to the 30-day validation period for your new account detailed above" while listing both the "TOTAL PREVIOUS ACCOUNTS" as well as a "TOTAL COMBINE NEW AND PREVIOUS ACCOUNTS" on the backside of the letter, Exhibit B overshadows the validation notice.

59. By stating "Please note that any accounts on the back side are not subject to the 30-day validation period for your new account detailed above" while listing both the "TOTAL PREVIOUS ACCOUNTS" as well as a "TOTAL COMBINE NEW AND PREVIOUS ACCOUNTS" on the backside of the letter, Exhibit B includes representations which are false, deceptive, and misleading as to a consumers rights under the FDCPA

60. Defendant violated 15 U.S.C. § 1692e, 1692e(2)(A), 1692e(10), 1692f, and 1692g(b).

## COUNT II - FDCPA

61. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

62. By seeking to collect an alleged debt in which the "Amount Owed" is the same as the amount listed under the "TOTAL PREVIOUS ACCOUNTS," for which the validation period had purportedly expired, and which is otherwise indistinguishable from the prior alleged debt, Exhibit B overshadows the validation notice.

63. Defendant violated 15 U.S.C. § 1692g(b).

## CLASS ALLEGATIONS

64. Plaintiff brings this action on behalf of a two proposed classes.

65. Class I consists of (a) all natural persons in the State of Wisconsin, (b) who were sent an initial collection letter in the form represented by Exhibit B to the complaint in this action, (c) which was seeking to collect an alleged debt which was incurred for personal, family, or household purposes (d) between September 11, 2017 and September 11, 2018, inclusive, (e) that was not returned by the postal service.

66. Class II consists of (a) all natural persons in the State of Wisconsin, (b) who were sent an initial collection letter in the form represented by Exhibit B to the complaint in this action, (c) for which the "Amount Owed" is the same as the amount listed under the "TOTAL PREVIOUS ACCOUNTS," (d) where such letter seeking to collect an alleged debt which was incurred for personal, family, or household purposes (e) between September 11, 2017 and September 11, 2018, inclusive, (f) that was not returned by the postal service.

67. The classes so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of each class.

68. There are questions of law and fact common to the members of each class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Defendant violated the FDCPA.

69. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

70. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

71. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

72. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: September 11, 2018

                                        **ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
      John D. Blythin (SBN 1046105)
      Mark A. Eldridge (SBN 1089944)
      Jesse Fruchter (SBN 1097673)
      Ben J. Slatky (SBN 1106892)
      3620 East Layton Avenue

Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com

14